JOEL TRAILOR, plaintiff in error, *v.* LEROY L. HILL, defendant in error.

*Error to Sangamon.*

IF, in a bill in chancery for a specific performance, the parties do not furnish any evidence, except such as would have the strongest tendency to involve the whole transaction in doubt and inextricable confusion, Courts have not the power to afford relief to the complainant. Especially they ought not to be inclined to favor his pretensions, when, from his own showing and upon the face of the proceedings, if he had justice on his side, his right might have been substantiated by incontrovertible proof.

BILL IN EQUITY for a specific performance, &c., filed by the plaintiff in error against the defendant in error, and heard before the Hon. Samuel H. Treat, at the March term 1845. Such proceedings were had as led to a dismissal of the bill. A history of the proceedings will be found in the Opinion of the Court.

*S. W. Robbins,* for the plaintiff in error, cited *Kelly's Heirs* v. *Bradford,* 3 Bibb, 317; *Shackelford* v. *Handley's Ex'rs,* 1 A. K. Marsh. 500; *McFerron* v. *Taylor,* 1 Peters' Cond. R. 525; *Rosevelt* v. *Fulton,* 2 Cowen, 133; *Hunt* v. *Rousmaniere's Adm'r,* 1 Peters, 14; *Allen* v. *Hammond,* 11 do. 70; *Hynes' Rep's* v. *Campbell,* 6 Munroe, 290; *Taylor* v. *Porter,* 1 Dana, 422; *Holeman* v. *Coleman,* 1 A. K.

Marsh. 296; *Calmes* v. *Buck,* 4 Bibb, 453; *Fleming* v. *Harrison's Devisees,* 2 do. 171.

*S. T. Logan* and *A. Lincoln,* for the defendant in error, cited *Burnett* v. *Robinson,* 2 Littell, 71, and contended that the complainant had brought no evidence to sustain his allegations in the bill.

The Opinion of the Court was delivered by

PURPLE, J.* The complainant filed his bill in the Circuit Court of Sangamon county, alleging that on the eighth day of November, 1840, Hill made and executed to him the following bond or agreement:

"November 18, 1840.

Know all men by these presents, that we, Leroy L. Hill bind ourselves to make to Joel Trailor a good and lawful deed to sixty acres of land, lying in Christian county, Illinois, on the waters of Bear Creek, containing, it being supposed, in the sixteenth section, being in the south east quarter of the north west quarter, and the east half of the south west quarter of the north west quarter sixteen, in township twelve, and range three, which is intended to be the black mark, sixty acres, not being confident of the numbers, we bind ourselves, our heirs, administrators, &c., to make the deed as above named, in twelve months from the above date.

Given under my hand the day and date.

Leroy L. Hill;"

that there was a mistake in the description of the land intended to be conveyed; that it was not the intention of the parties to describe the land represented by the black lines in the plat, being the south east quarter of the north west quarter and south half north east quarter of the north west quarter section 16, 12 north, 3 west; that Hill failed to make the conveyance according to the conditions of the bond; that the amount of the purchase money was $300; that $200

*WILSON C. J., did not sit in this case.

had been paid before date of the bond in property and cash, and that for the residue, Trailor was to give his note to N. M. Vandever, School Commissioner of Christian county, with security, as soon as Hill had made the deed; that he is still willing to take the deed, and comply with the contract on his part; but that Hill has no title to the land, and is unable to make one. He prays for a specific performance of the contract, or a recision of the same, and for a decree for a repayment to him of the purchase money advanced. The bill was afterwards amended by specifying the property alleged to have been paid towards the purchase money of the land.

The answer of Hill admits the execution of the contract set out; denies that the consideration was $300; alleges that he had bought of the School Commissioner sixty acres of land at the price of $100, for which he had given his note, which remained unpaid; that Trailor agreed to take this land off his hands at the same price, and substitute his, Trailor's, note in the place of defendant's given for the land; denies that Trailor ever paid him any thing towards the purchase, and charges that he never gave his note to the School Commissioner according to the contract; and admits that the land intended to be sold, is misdescribed in the contract, and alleges that it is equally so in complainant's bill, and that the true description of said land is sixty acres east three quarters of north half of the south west quarter section 16, 12 north, 3 west; that the defendant's note is still in the hands of the School Commissioner, and that since said contract, he has continued to pay the interest on the same. He admits that he received some property from the complainant, but denies that it was received in payment for this land, and says it was taken in payment for rails sold to complainant. He denies the price charged for the property, and alleges that he took it in a lumping way; that there had previously been much deal between them; that on the day the land was sold, they had had a final settlement; that he was mistaken about having bought the land of School Commissioner of Christian county; that he and Silas P. Hill bought it of the

School Commissioner of Montgomery county before Christian county was set off and established, and exhibits a perfect title in Paulina S. Hill to this land on the thirty first day of May, 1842, and tenders her deed to complainants.

There are some other statements contained in the bill, and answers, but they are not deemed material. There is but little evidence in the case of a satisfactory or certain character.

The complainant proved by M. Petty, that he was at Hill's house in the spring of 1842; that Hill spoke about the sixty acres of land he had sold to Trailor; also of their settlement, and said that Trailor had taken in a note of $53·50, that he, Trailor, had given in part payment; that Trailor, was to pay $100 to the School Commissioner; that he had received some property from Trailor, and that Trailor had sued him for it; that he had received it at a high price towards the land, and witness' impression was, that Hill said he had received $200 in property, including the $53 note, and he was willing to make Trailor a deed as soon as he paid the School Commissioner.

And by Thomas Trailor, that complainant bought of Hill sixty acres of land at $5 per acre; that witness heard the bargain; that complainant paid Hill towards the land one mare at $80, one horse at $53, and three calves at $3 each. Witness did not know what land it was.

And by Samuel W. Crothers, that he understood from the parties that the price agreed to be paid for the land was $5 per acre; this price included rails to enclose and fence the land; that $200 dollars was to be paid to Hill, and $100 to the School Commissioner; that Trailor had paid Hill his $200 and that the land was situated on Bear Creek; that rails were hauled out upon the land, but not put up; that Hill owned another portion of the same tract adjoining the land sold to Trailor, and that both tracts were to be enclosed in a common fence. Witness understood from Hill that he had received of Trailor two horses toward the land and the privilege of rails to fence it; that the land sold lay due west of land Silas Hill then lived on; that the $53 note was given

for a timber tract of land of eleven and a half acres, which Hill deeded to Trailor's son after settlement; that the bond was actually signed on the twenty fourth day of November, 1840.

The defendant proved by Elizabeth Hailey that Trailor told her he was to pay for the rails in property; that both parties said Trailor was to take the land and pay the School Commissioner, and release Hill from any further liability so far as the cost of the school land which Trailor had bought.

And by Paulina T. Hill, that in 1839, or 1840, Trailor stated in her presence, that he was to give the same for the land which he had bought of Hill that Hill was to give, and pay the same to the School Commissioner and release Hill.

And also by William Hatchett, that, as well as he could recollect, about the fall of 1839, he had some conversation with Trailor about Hill's breaking; that Trailor stated he did not care; that he was to give the same that Hill gave for the land, and that he could hold it by paying the interest to the School Commissioner.

This was all the evidence which was material, as tending to prove the issues. The Court decreed that complainant pay to the Master in Chancery $100 by the next term of the Court after the trial below, and that upon such payment being made, the deed on file from Paulina T. Hill to complainant, be delivered to him; in the mean time, that the Master in Chancery examine and report whether there were any liens or incumbrances against the land described in said deed. At the next term, the Master reported that no such liens or incumbrances existed, and the complainant failing to pay the money, the complainant's bill was dismissed.

This decision and decree of the Court below is now assigned for error.

The Court is of opinion, that the allegations of the complainant's bill are not sustained by the evidence. The complainant avers that the defendant bound himself to convey to him certain real estate, and sets out the contract signed by defendant; alleges that the land therein described is not the land designed to be conveyed; that the land intended is

that designated by the black lines upon the plat attached to the agreement. Independent of this, there is no proof whatever as to the location of the land, except that it is in the sixteenth section, twelve north, three west. But it is insisted, that this plat being a portion of the contract between the parties, and being by them referred to, identifies the bond with sufficient certainty. There is some force in this argument, and it would be entitled to much consideration, if the Court could be assured which portion of the map or plat the parties treated as north and south at the time they made the contract. It is urged by the complainant's counsel, that inasmuch as all scientific men make the top of a map north, that we are therefore bound to infer that the parties, in this instance, have been guided by the lights of science. A bare glance at the contract itself, it seems to me, would sufficiently prove, without the aid of experience in matters of the sort, that this would be a somewhat strained, and by no means a safe interpretation. If the parties possessed sufficient knowledge and intelligence to make a perfect plat of the sixteenth section, and did so, treating the top thereof as north, it is difficult to understand why they could not describe the land correctly in the contract. If the

parties correctly understood the subject and treated the top of this plat as north, then there can be but little, if any doubt that Hill agreed to convey the land, which Trailor claims he purchased, as thus:

But if we consider the right hand side of this plat as north, it is equally apparent that the land which Hill alleges that he and Silas Hill had contracted to purchase of the School Commissioner, was the land intended to have been described in the contract, as thus:

Placing the plat in this position, the black lines indicate the land which defendant contends he contracted to convey, which is the same land which was afterwards conveyed to

Silas Hill by the Governor of the State under the purchase from the School Commissioner. There is some evidence that Hill owned other land adjoining the land contracted to be conveyed, which, of course, must have been purchased by him from the School Commissioner, but neither of the parties contend that this other land was that which was designated to have been described by the contract.

In what portion of the tract this land was situated nowhere by the evidence appears, except this far; that one witness testifies, that this other land and the land contracted to be conveyed to Trailor were to have been enclosed in the same fence. With this exception, it is not shown that Hill had any more lands which he had purchased of the School Commissioner.

On the part of Hill, the evidence strongly tends to prove that the land he intended to sell Trailor, was land which he had purchased of the School Commissioner, or contracted to purchase, and for which he had given his note, which Trailor agreed to take up and substitute his own therefor.

Hill, in his answer, admits that the land was mis-described in the contract, but he expressly denies that it is properly described in the complainant's bill, and upon this issue the complainant rests his case upon his allegations and his plat annexed. These are too uncertain for his purpose. If his case had truly been a meritorous one, it would have been most easy for him to have established it beyond a doubt.

Rails were hauled out upon the tract, which was the subject of the contract; and one witness testified, that the land sold lay directly west of where Silas Hill then lived. By showing where these rails were hauled; or upon what land Silas Hill resided, it could have been readily and certainly ascertained for what particular tract the parties had negotiated.

From an examination of the whole case, it would almost seem that both complainant and defendant had studiously avoided furnishing any evidence, except such as would have the strongest tendency to involve the whole affair in doubt and inextricable confusion.

Under such circumstances, the Courts have not the power to afford relief to the complainant, and especially they ought not to be inclined to favor his pretensions, when, from his own showing and upon the very face of the proceedings, if he had had justice on his side, his right might have been substantiated by incontrovertible proof.

The decree of the Circuit Court of Sangamon county is affirmed with costs.

*Decree affirmed.*